**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HERIBERTO RODRIGUEZ, | ) | Civil Action No. 2: 14-cv-0324 |
| | ) | |
| Plaintiff, | ) | |
| | ) | United States District Judge |
| v. | ) | Arthur J. Schwab |
| | ) | |
| JOHN E. WETZEL, et al., | ) | United States Magistrate Judge |
| Defendants. | ) | Cynthia Reed Eddy |

**REPORT AND RECOMMENDATION**

**I.     Recommendation**

For the reasons that follow, it is respectfully recommended that the Partial Motion to Dismiss filed by Defendants (ECF No. 55) be granted in part and denied in part.  It is further recommended that Plaintiff not be provided leave to amend as it would be futile.

**II.     Report**

**A.     Relevant and Material Facts**

Plaintiff, Heriberto Rodriguez ("Plaintiff" or "Rodriguez") is a state prisoner committed to the custody of the Pennsylvania Department of Corrections ("DOC") and currently confined at the State Correctional Institution  at Pittsburgh, Pennsylvania  ("SCI-Pittsburgh").  He is serving a life sentence for first degree murder and concurrent sentences for related firearm offenses.  *See* CP-51-CR-1109321-2002.[1]  According to the Amended Complaint, Rodriguez has been housed in the Secure Residential Treatment Unit ("SRTU"), a long-term psychological behavioral unit for inmates who have incurred many misconducts and shown an inability to function in prison,

---

[1]     The docket of Rodriguez's criminal case is publically available on the website of the Pennsylvania courts at http://www.pacourts.us.  The Court takes judicial notice of the docket. *See* Fed.R.Evid. 201(b)(2) and *Wilson v. McVey*, 579 F. Supp.2d 685, 688 (M.D.Pa. 2008) (taking judicial notice of state-court docket).

since December 2012.[2] *See* Amended Complaint at ¶ 28. Rodriquez has filed hundreds of grievances and has frequently been on grievance restriction for the filing of enormous quantities of frivolous grievances. (ECF No. 56 at n.5).

Rodriguez initiated this Section 1983 prisoner civil rights action on March 13, 2014, challenging numerous conditions within the SRTU and the treatment he experienced in conjunction with a variety of incidents occurring between December 1, 2012, and March 13, 2014. The Complaint was handwritten, largely illegible, and in the form of a one 21-page paragraph. Defendants filed a Motion for a More Definite Statement (ECF No. 45), which the Court granted (ECF No. 49). Rodriguez was given leave to file an Amended Complaint that was more legible and that followed the Rules of Civil Procedure.

On August 7, 2014. Rodriguez filed a 50-page Amended Complaint, consisting of 19 single-spaced typewritten pages and 31 handwritten pages (ECF No. 53), which remains the operative complaint. The Amended Complaint is 50 pages long with 216 numbered paragraphs. It contains, as best as can be discerned, 55 purported claims[3] against twenty-seven (27) defendants, twenty-four of which have been served with process and are represented by the same

---

[2]  According to Defendants, Rodriquez has a mental health diagnosis and a long history of misconducts; however, Rodriquez denies that he has any mental illness and refuses all treatment, including medications, and he refuses to comply with any of the SRTU programs. (ECF No. 56 at n.5; and ECF No. 74 at 27 ("Plaintiff . . . has been involuntary (sic) at the SRTU, a mental health care unit for four years, when he does not suffer any mental health issue's (sic).)"). *See* also Amended Complaint at ¶ 28 ("Since December 2012, Plaintiff Heriberto Rodriguez was forced to involuntary treatment at the SRTU Program, at SCI Pittsburgh. When Plaintiff do not suffer of any mental health issues and the SRTU Program is not part of Plaintiff sentence . . . ."

[3]  Ten of the 54 claims occurred after March 13, 2014, the date of the original complaint. As will be discussed further, it is recommended that these claims be dismissed as they are not properly a part of this lawsuit.

counsel:[4] Secretary John E. Wetzel; Staff Assistant Jeffrey Witherite (Whiter), and Grievance Officer Dorina Varner, of the Pennsylvania Department of Corrections ("DOC"), as well as the following officials at SCI–Pittsburgh: Superintendent Mark Capozza (Cappozza), Deputy Superintendents Michael Zaken (Zenken) and William Woods. Also named are Grievance Coordinator Carol A. Scires (Scireis), Kitchen Supervisor John Klocko (Closko), Commissary Supervisor Cassandra Williams, Librarian II Marilyn Fusko, Librarian II Leah Nichols (Nichole); Mail Inspector Martha Adams, Nurses Patricia Scott and JoAnn Kirby (Johan), Lt. Kenneth Peer, Sgts. William Chesmer (Cheesmer), Reginald Robenson (Rebensen), Thomas Farley (Faerly), and C/Os John Elk, Charles Barnard (Bernard), James Lamonaca (Lamonale), Michael Phillippi (Philiphi), Antacic, and Smith.[5] Three named defendants remain unserved: "Lambocty," "Rhode," and "C/O Moran."

In general, Rodriguez complains of conditions and problems he has experienced as a prisoner in the SRTU. In an effort to summarize the claims in the Amended Complaint, Defendants have categorized the claims into twelve (12) categories: cell / program placement and conditions (9 claims); excessive force / failure to protect (3 claims); verbal threats (3 claims); falsified misconducts (4 claims); denial of medical care (2 claims); extortion (4 claims); commissary issues (4 claims); denial of access to the courts (7 claims); food deprivation and tampering (11 claims); property confiscation (6 claims); mail destruction (1 claim); and

---

[4] According to Defendants, a number of the names of the Defendants have been incorrectly spelled in the Amended Complaint. The names as reflected in this Report and Recommendation are the correct spellings as identified by Defendants, with the names in parenthesis reflecting the incorrect spellings as noted on the Amended Complaint and docket.

[5] In his Brief in Opposition, Plaintiff represents that he has abandoned his claims against Defendant David Smith. (ECF No. 74 at 4.) Therefore, it is recommended that Defendant Smith be dismissed with prejudice.

retaliation (1 separate, overarching claim).  Rodriguez does not dispute this categorization of his claims.

Rodriguez  seeks compensatory and punitive damages as well as injunctive relief.

Defendants have filed a Partial Motion to Dismiss the Amended Complaint, with a brief in support, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF Nos. 55 and 56). Rodriguez has responded in opposition in an 7-page handwritten response (ECF No. 73) and a 100-page handwritten brief.  (ECF No. 74).  The matter is ripe for disposition.

**B**.      **Standard Of Review For Motions to Dismiss**

1.      *Pro Se Litigants*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)). *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293

F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

2. <u>*Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard*</u>

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied,* -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must conduct a three-step analysis when considering a motion to dismiss for failure to state a claim. *Santiago v.*

*Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal,* 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

## C.    Discussion and Analysis

Before addressing the merits of Rodriguez's claims, there is an issue which must be addressed at the outset. The Amended Complaint contains approximately ten (10) claims each of which arise from incidents which allegedly occurred after March 13, 2014, the date of the original complaint.  *See* Amended Complaint, at ¶¶ 175 - 188. Rodriguez was given leave to amend in order to make the allegations contained in his original complaint legible and to conform to the Rules of Civil Procedure. He was not granted leave to enlarge his claims. Therefore, it is recommended that all claims which occurred after March 13, 2014, be dismissed.

The Court will now proceed to address Rodriguez's claims by category.

1.    Cell/ Program Placement and Conditions Claims

a. *Placement in the SRTU Program Against His Will (Amended Complaint, ¶ 28)*[6]

Rodriguez claims that he was placed in the SRTU program against his will.  Defendants assert that Rodriguez does not enjoy a right to any particular custody or security classification, and does not have a right to be housed in any particular prison or housing unit. Accordingly, they conclude that any challenge by Rodriquez to his placement in the SRTU, whether such challenge is construed as a due process claim or an Eighth Amendment conditions of confinement claim, must fail.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is

---

[6]    The Court has attempted to identify by paragraph where in the Amended Complaint each claim is located.  However, because many of the claims are combined and/or are not easily identified, the listed Paragraphs are by no means a complete identification.

mandated to protect it. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). A protected liberty interest may be created by either the Due Process Clause itself or by state law. *Id.* There can be no due process violation where there is no protected liberty interest.

"It is well-settled that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification." *Henderson v. Thomas*, 2012 WL 4434750 (M.D. Pa. 2012) (internal citations omitted). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montayne v. Haymes*, 427 U.S. 236, 242 (1976); *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997) (citing *Sandin v. Connor*, 515 U.S. 472 (1995)).

Due process protection only applies when a prisoner is subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Griffin,* 112 F.3d at 706 (quoting *Sandin,* 115 S.Ct. at 2301). The baseline for determining what is an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law. *Id.* Normally, placement in disciplinary or administrative custody is not an atypical or significant hardship, but rather is a common incident of prison life for a variety of offenses and conditions. *Id.* The United States Supreme Court has held that "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). The Amended Complaint is devoid of any allegation that Rodriguez was placed in the SRTU program for punitive reasons.

A plaintiff asserting a claim of cruel and unusual conditions of confinement under the Eighth Amendment must satisfy a two-part test, with an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a plaintiff must show that the conditions to which he is subjected are "sufficiently serious," and to satisfy the subjective component, the plaintiff must show that the defendants are deliberately indifferent to his health or safety. *Id.* Mere placement in disciplinary or administrative custody, without more, does not violate the Eighth Amendment. *Griffin,* 112 F.3d 703 (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).

The Amended Complaint is devoid of any allegation that could constitute an "objectively, sufficiently serious" risk of harm that Rodriguez faced or that any defendant was deliberately indifferent to any risk he faced because he was placed in the SRTU program.

The Court finds that any attempt by Rodriguez to challenge his placement in the SRTU program fails whether his claim is construed as a due process claim or an Eighth Amendment conditions of confinement claim. Accordingly, it is recommended that this claim be dismissed.

      b. *Placement in the Same Program as Inmate with Whom He has a Separation Order (Amended Complaint ¶ 29)*

Rodriguez claims that his Eighth Amendment rights have been violated because he has been placed in the same program as another inmate (identified as Inmate Steven Cave) with whom he has a "written separation."

Under the standards set forth in *Iqbal* and *Twombly,* in order to survive a motion to dismiss, factual allegations cannot be speculative or conclusory. There are no facts presented in the Amended Complaint which could support Plaintiff's speculative contention that being placed

in the same program as Inmate Cave poses a risk of serious harm. The mere fact that Rodriguez and Inmate Cave have been placed in the same program fails to state a constitutional violation. Accordingly, it is recommended that this claim be dismissed.[7]

c. *Placement in Cell with Damaged Table (Amended Complaint, ¶¶ 93-96, 99-100)*

Rodriguez attempts to bring an Eighth Amendment conditions of confinement claim based on the allegation that on April 2, 2013, he was placed in a cell that had a damaged table. Rodriguez alleges that on April 18, 2013, the table broke when he sat on it, resulting in him suffering injuries to his "head, right arm, and right leg." (ECF No. 74).

The Eighth Amendment protects prison inmates from cruel and unusual punishment. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Allah v. Ricci,* 532 F. App'x 48 (3d Cir. 2013). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981). Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and they must take "reasonable measures" to guarantee inmate safety from violence at the hands of other prisoners. *Farmer,* 511 U.S. at 832.

To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a

---

[7]     Plaintiff also claims that he was assaulted by Inmate Cave on January 1, 2013. This claim is a separate claim which Defendants do not seek to dismiss of that claim. *See* Section (C)(2) *infra*.

substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. *Id.* However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Dockery v. Beard*, 509 F. App'x 107, 112 (3d Cir. 2013) (quoting *Farmer,* 511 U.S. at 834).

The Amended Complaint contains no facts suggesting that Defendants wantonly inflicted unnecessary pain on Rodriguez or that Defendants subjected him to a situation below the minimal civilized standard of living. Therefore, it is recommended that Rodriguez's condition of confinement claim based on a broken table in his cell be dismissed as it fails as a matter of law.

> d. *Placement in Hard Cell and/or in Suicide Smock (Amended Complaint at ¶¶ 09, 120, 142)*

According to the Amended Complaint, Plaintiff was placed in a hard cell and/or in a suicide smock for short periods of time (a week or less). These are Eighth Amendment conditions of confinement claims that are subject to the *Farmer* two-part analysis. Fatal to the Amended Complaint, is that there are no allegations that being placed in a hard cell or in a suicide smock caused Rodriguez to be incarcerated under conditions posing an "objectively, sufficiently serious" risk of harm or that prison officials were deliberately indifferent to such a risk.

Therefore, it is recommended that Rodriguez's condition of confinement claims based on his placement in a hard cell and/or suicide smock be dismissed as they fail as a matter of law.

2.     Excessive Force / Failure to Protect (Amended Complaint at ¶¶ 29 - 34, 144 - 146, 157 - 158)

Rodriguez brings two excessive force / failure to protect claims:  (i) that Inmate Cave assaulted him and that the assault was allowed and encouraged by some of the defendants and (ii) that on August 24, 2013, Defendants Chesmar, Barnard, Elk, and Peer were involved in an incident which resulted in the food lid of the aperture slamming down on Rodriguez's hand.  The Court notes that Defendants do not seek to dismiss either of these claims.[8]

3.     Verbal Threats (Amended Complaint at  ¶¶ 34 - 36, 150, 157 - 158)

Plaintiff alleges that on a number of occasions various Defendants have verbally threatened him with bodily harm and/or death.  Assuming these allegations are true, it is well established that the use of words, no matter how violent, vulgar or unprofessional, is not actionable under 42 U.S.C. § 1983.  *Dunbar v. Barone,* 487 F. App'x 72, 723 (3d Cir. 2012) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment").   There is no assertion in the Amended Complaint that any of these purported comments were accompanied by any physical abuse. Consequently, because the alleged verbal threats were not accompanied by any injurious actions, or physical actions of any kind, the Court finds that Rodriguez fails to state a cognizable claim against Defendants.

Therefore, it is recommended that Rodriguez's claims of verbal threats be dismissed as they fail as a matter of law.

---

[8]     It appears that the Amended Complaint may contain a duplicate claim regarding the slamming of the food lid of the aperture on Rodriguez's hand.  However, only the incident of August 24, 2013 is identified with any specificity in the Amended Complaint.  *See* Paragraphs 144 - 146. Therefore, this is the only excessive force / failure to protect claim that is viable with respect to the food aperture.

4.     Falsified Misconducts / Retaliation (Amended Complaint at ¶¶ 30, 35, 36, 120, 131)

Rodriguez alleges that he was falsely issued misconducts on the following dates:  January 8, 2013; April 25, 2013; June 24, 2013; and May 9, 2014.[9]  He explicitly states that the first two were retaliatory, and although he does not use the word "retaliation" with regard to the June 24, 2013 misconduct, throughout the Amended Complaint, Rodriguez implies that all of the actions of the Defendants were retaliatory in nature.

It is well settled that a claim that a misconduct report was false, standing alone, does not violate a prisoner's constitutional rights, so long as procedural due process protections were provided.  *Richardson v. Sherrer*, 344 F. App'x 755, 757–58 (3d Cir. 2007); *Booth v. Pence*, 141 F. App'x 66 (3d Cir. 2005); *Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d Cir. 2002).   The Amended Complaint contains no allegation that Rodriguez's procedural due process rights were violated.

These principles also directly apply to inmate retaliation claims stemming from disciplinary proceedings. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights by filing a false misconduct report must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. *Green v. Coleman*, 575 F. App'x 44, 46-47 (3d Cir. 2014) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

---

[9]     As discussed *supra*, the misconduct report of May 9, 2014, falls outside the scope of the original complaint and should be dismissed.  Plaintiff states in his Brief in Opposition that the correct date of the Misconduct Report is May 1, 2014, not May 9, 2014.   However, this correction is of no consequence as it still remains outside the time period of the original complaint.

With respect to showing that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000).

While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003), in the prison discipline context, an inmate's retaliation claim will fail whenever the defendant shows that there is "some evidence" to support the disciplinary action. *See also Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010).

These claims are judged against exacting legal standards, and in many instances resolution of prison disciplinary claims entails an examination of matters outside the pleadings relating to the disciplinary proceedings themselves. *See, e.g., Mitchell v. Horn*, 318 F.3d at 530; *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). Defendants ask the Court to dismiss this retaliation claim because the finding of guilt against Rodriguez on the charged misconducts is sufficient to show that the issuance of the misconducts was reasonably related to a legitimate penological interest, and that Rodriguez would have been charged regardless of any protected activity he was engaged in. *See Carter,* 292 F.3d at 159; *Henderson,* 29 F.3d at 469 (concluding that, because the finding of guilt in the inmate's disciplinary hearing was based on "some evidence," that finding "essentially checkmates his retaliation claim"). However, the United States Court of Appeals for the Third Circuit recently has held that the better course of action is to allow such claims to proceed and not apply the burden-shifting aspect of the retaliation standard at the motion to dismiss stage. *Bond v. Horne*, --- F. App'x -----, 2014 WL 278526, at *3 (3d Cir. Jan.

27, 2014). Without passing judgment as to the ultimate success of this retaliation claim, at this stage it is recommended that the claim be permitted to proceed.[10]

5. <u>Denial of Medical Care (Amended Complaint at ¶¶ 147 - 147, 159 - 160)</u>

Rodriguez alleges that after he was assaulted with the food aperture, he was denied medical care. Specifically, the Amended Complaint states that he was not given any x-rays or pain medications and that he was bruised and in pain for four months.

The United States Supreme Court has made clear that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotations omitted). In this context the subjective prong of an Eighth Amendment "deliberate indifference" claim is met where a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer,* 511 U.S. at 837.

Rodriguez's complaints concerning the denial of medical treatment following the assault with the food aperture are intertwined with his excessive force claim based on the same event. Standing alone, the injuries Rodriguez suffered do not constitute a serious medical need. Injuries such as cuts, scrapes, scratches, and bruises do not in themselves reflect trauma that necessarily calls for immediate medical treatment from a physician. Thus, whether the lack of immediate medical treatment following this incident violated the Eighth Amendment is properly considered

---

[10] The Court notes that Defendants attached to their motion to dismiss the challenged misconduct reports. However, Defendants filed a partial motion to dismiss; they have not moved for summary judgment with respect to this claim. As such, the Court cannot consider any documents submitted by Defendants in support of their Motion to Dismiss.

as part of Rodriguez's excessive force claim. Therefore, Rodriguez's stand alone claim for denial of medical treatment should be denied.

6. Extortion for "Music Songs" (Amended Complaint at ¶¶ 150, 173)

Rodriguez claims that some of the defendants tried to extort his music songs from him on threat of bodily harm due to the presence of a "corrupt organization."[11] These allegations are unsupported by anything other than bald assertions and it is, therefore, recommended that these claims be dismissed as they fail as a matter of law.

7. Commissary Issues (Amended Complaint at ¶¶ 46-50, 77-79, 82-83, 170)

Rodriguez alleges that he was unable to make purchases from the prison commissary either because his commissary slips were thrown away or because he was not given the items he purchased. The District Court for the Western District of Pennsylvania has consistently held that "inmates have no federal constitutional right to be able to purchase items from a commissary" and have "no federal constitutional right to purchase items from the Jail commissary at any particular price or to have the vendor restrained from charging even exorbitant prices." *Nesmith v. Beaver County Jail,* 2012 WL 3245495, at *9 (W.D.Pa. 2012) (quoting *Travillion v. Allegheny Cnty. Bureau of Corrections*, No. 2:07–cv–928, 2008 WL 2699988, at *2 (W.D.Pa. July 7, 2008) and *Hopkins v. Keefe Commissary Network Sales*, No. 07–745, 2007 WL 2080480, at *5 (W.D.Pa. July 12, 2007) (collecting cases)); *Wallace v. Rustin*, No. 10–1474, 2011 WL 3957419, at *2 (W.D.Pa. Sept.7, 2011).

Accordingly, it is recommended that these claims be dismissed as there is no constitutional right to be able to make purchases from a prison commissary.

---

[11] According to Plaintiff's brief, on June 27, 2013, he sent 270 music songs to the copyright office.

8. Denial of Access to the Court (Amended Complaint at ¶¶ 62 - 63, 65 - 68, 77, 83, 114 - 116, 167 - 168, 169, 171 - 172)

Rodriguez attempts to allege numerous claims for access to the courts that arise from a variety of circumstances relating, *inter alia*, to the destruction or confiscation of property, denial of stationery items from the commissary, refusal of the librarians to make copies of his legal work and provide him with FRCP 4 materials.

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Here, Rodriguez alleges in a conclusory fashion that he lost the opportunity to present legal claims. In these circumstances, the Court of Appeals for the Third Circuit has stated that prisoners:

> must show (1) that they suffered an "actual injury"—that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. *See Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." *See id.* at 416–17, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413.

*Id.* at 205-06 (emphasis added). The court of appeals added that the underlying claims must be pled "in a manner that satisfies Fed.R.Civ.P. 8(a)," *id.* at 206 n. 8 (citing *Harbury*, 536 U.S. at 417–18), meaning that an inmate must present a short and plain statement of each claim said to have been lost by a defendant's conduct. The inmate must also plead facts showing how his claims "may no longer be pursued as a result of defendant's actions." *Id.* at 206, n. 9.

Fatal to each of Rodriguez's claims is that the Amended Complaint fails to include allegations showing that his underlying claims were non-frivolous or arguable. The Amended Complaint also fails to allege facts showing that the defendants' conduct caused him to lose his

chance at pursing the claim or claims. For these reasons, it is recommended that Rodriguez's access to courts claims be dismissed.

9. <u>Food Deprivation and Tampering</u>

a. *Food Deprivation ((Amended Complaint at ¶¶ 97, 100, 101 - 102, 104 - 105, 119 - 121, 155 - 156)*

Rodriguez claims that he missed one or two meals or "a few meals." Food deprivation claims are conditions of confinement claims. Therefore, plaintiff must allege facts sufficient to meet the two-prong *Farmer* test. Our Court of Appeals has recognized that "only a <u>substantial</u> deprivation of food to a prisoner sets forth a viable Eighth Amendment claim." *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (emphasis added). However, when it is alleged that prison officials have, in a systematic way, denied a series of meals to an inmate over a span of weeks, the Eighth Amendment's prohibition against cruel and unusual punishment is implicated.

Rodriguez's Amended Complaint fails to allege sufficient facts from which it could be inferred that he has suffered a substantial deprivation of food or that any of the Defendants acted with the requisite culpable state of mind or engaged in a systematic way to deny him a series of meals over a span of weeks. See *Zanders v. Ferko*, 439 F. App'x 158 (3d Cir. 2011) (alleged deprivation of three meals over two days fails to rise to the level of a constitutional violation) (citing *Foster v. Runnels*, 554 F.3d 807, 812, 13 (9th Cir. 2009) (holding denial of 16 meals over 23-day period was sufficiently serious deprivation for purposes of the Eighth Amendment but denial of meals on two isolated occurrences did not rise to the level of a constitutional violation.)

Accordingly, it is recommended that Rodriguez's food deprivation claims be dismissed.

Rodriguez alleges that on certain occasions there has been hair in his food and saliva in his coffee. It appears that Rodriguez is attempting to bring five (5) such claims.

First, Rodriguez alleges that sometime around April 18, 2013, Defendants Chemser, Elk, Barnard, Roberson, and Lamonaca used "food as a measure of punishment" and that Rodriguez found a pubic hair and trash on his food trays. (Amended Complaint, at ¶¶ 101 -102). He alleges that he wrote to Kitchen Supervisor Klosko, Superintendent Capozza, and two non-defendants about the issue but nothing was done.

Rodriguez next alleges that from August 21 - 23, 2013, he was served "unclean" food with hair on it for each meal. He alleges he was served by Defendants Chemser, Elk, Barnard, and Lamonaca, who allegedly told him he needed to contact Kitchen Supervisor Klosko. (Amended Complaint, at ¶ 142).

In his third food tampering claim, Rodriguez alleges that Defendants Elk, Barnard, and Klosko decided to punish him from August 26 to September 2, 2013, and he found hair in his food, and "they spit" in his coffee. The Amended Complaint also states that Rodriguez heard Lamonaca talking and then spitting in Rodriguez's coffee on September 2, 2013. (Amended Complaint, at ¶¶ 148 - 149).

Fourth, Rodriguez alleges that from February 22 - 26, 2014, Defendants Roberson, Lamonaca, Chesmer, and Elk spit in his coffee and he found hair in his food.

In his fifth food tampering claim, Rodriguez alleges that the officers spit in his coffee an unknown number of time.

By Plaintiff's own admission, he has named as a defendant every corrections officer who served him food plus the kitchen supervisor.

There is support for the proposition that prison officials may violate the Eighth Amendment by serving "unsanitary, spoiled or contaminated food" if the prisoner also alleges that he or she suffered a "distinct and palpable injury." *See Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983). However, an inmate claiming an Eighth Amendment violation must prove "both an objective element - that the deprivation was sufficiently serious - and a subjective element- that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996). As discussed *supra*, only "extreme deprivations" that deny "the minimal civilized measure of life's necessities . . . form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

With one exception, the Amended Complaint contains no allegations that any of the named defendants were or should have been aware that hair and/or saliva was in Rodriguez's food or coffee. The one exception is Rodriguez's claim that he overheard Defendant Lamonaco talking and then spitting into his coffee on September 2, 2013.

The Amended Complaint further contains no allegation that Rodriguez ate the contaminated food or drank the contaminated coffee or that Rodriguez suffered any ill health effects as a result of the contaminated meals and coffee or that he suffered any additional risk of harm. For these reasons, it is recommended Rodriguez's food tampering claims be dismissed for failure to state a claim.

10. Property Confiscation (Amended Complaint at ¶¶ 117, 120-125, 142, 153-154, 173)

Rodriguez alleges that on various occasions, he had property confiscated. Specifically, he claims that a variety of items were confiscated, including, *inter alia,* a "recreation book," legal transcripts, socks, photographs, unspecified items, personal hygiene items, and copies of

transcripts from his criminal case. To the extent that some of these claims overlap with his access to court claims, those claims were addressed *supra*.

Rodriguez's deprivation of property claims fail regardless of whether they are couched in terms of illegal seizures or due process.

The law is well-settled that the confiscation of a prisoner's property does not violate his right to due process as long as a meaningful post-deprivation remedy is provided. *Hudson*, 468 U.S. at 533; *Monroe*, 536 F.3d at 210. Rodriguez had access to the grievance procedure, as reflected by the several hundred grievances he filed during the relevant time period.

Likewise, any purported Fourth Amendment claim fails because prisoners have no justifiable expectation of privacy in their cells and in the contents of their cells. *Hudson*, 468 U.S.at 526-528; *Crosby v. Piazza,* 465 F. App'x 168, 172 (3d Cir. 2012).

For these reasons, the Court recommends that Rodriguez's property confiscation claims be dismissed as they fail as a matter of law under either the Due Process Clause or the Fourth Amendment.

11. <u>Mail Destruction (Amended Complaint at ¶ 130)</u>

In a rather conclusory fashion, the Amended Complaint states that Rodriguez's incoming mail was destroyed. Fatal to the claim, however, is that there are no factual allegations to support this allegation. Under *Twombly* and *Iqbal,* this conclusory allegation is insufficient to support a claim. Accordingly, it is recommended that this claim be dismissed.

12.    <u>Retaliation (Amended Complaint, passim)</u>[12]

According to the Amended Complaint, virtually every action taken by Defendants was in retaliation for Plaintiff filing numerous grievances against DOC officials and employees.

"Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution . . . . " *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990).    A plaintiff in a retaliation case must prove that: (1) he engaged in constitutionally protected conduct, (2) "he suffered some adverse action at the hands of the prison officials"; and (3) "his constitutionally protected conduct was a substantial or motivating factor in the decision to [take that action]." *Green v. Coleman*, 575 F. App'x 44, 46-47 (3d Cir. 2014) (quoting *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (internal quotation marks omitted)) The requisite causal connection can be demonstrated by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* (*quoting Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007)).

Throughout the Amended Complaint, Rodriquez alleges that the various actions of the Defendants were taken in retaliation for him filing grievances. The Court finds that Plaintiff's bare allegations of retaliation without more are implausible and conclusory. The Amended Complaint does not allege any facts that would satisfy the third element of a retaliation claim, such as the timing of the events in question. The Amended Complaint does not allege any causal connection between Rodriguez exercising his right to file grievances and the various alleged actions of the Defendants.    Additionally, a number of acts which Rodriguez contends to be

---

[12]    The separate retaliation claim in which Rodriguez alleges that Defendants issued false misconduct reports in retaliation for his filing of grievances has been discussed in supra at Section C (4).

retaliatory acts, are in essence allegations of events and restrictions which are part of his normal confinement in the SRTU, and thus, are not "adverse" actions.

For these reasons, the Court finds that, with the exception of Rodriguez's claim regarding the retaliatory filing of false misconduct reports, the factual allegations of the Amended Complaint simply do not "raise a right to relief above the speculative level" with respect to his over-arching claim of retaliation. *Twombly*, 550 U.S. at 555. Thus, the Amended Complaint fails to satisfy the necessary elements to support a retaliation claim.

13. Equal Protection (passim)

Rodriguez contends that "he's the only Puerto Rican inmate at the SRTU program and he has been treated differently then (sic) white's, and African Americans inmates." ECF No. 74 at 41. The Amended Complaint contains no factual allegations to support this contention.

In order to sustain a claim under section 1983 based on the Equal Protection Clause of the Fourteenth Amendment, Rodriguez must show he "was a member of a protected class, was similarly situated to members of an unprotected class, and was treated differently from the unprotected class." *Wood v. Rendell*, Civ.A. No. 94–1489, 1995 WL 676418, at *4 (E.D.Pa. Nov. 3, 1995) (citation omitted); *see also McKeithan v. Beard*, 322 F. App'x 194 at 199 n. 6 (3d Cir. 2009). In its most general sense, the Equal Protection Clause directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). The Court of Appeals for the Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' " *Artway v. Attorney Gen.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)); *see also Kuhar v. Greensburg–Salem Sch. Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir. 1980) ("An equal

protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

There are no facts alleged in the Amended Complaint which could support a claim that Defendants discriminated against him on the basis of any protected class or that they treated Plaintiff differently from similarly situated individuals on the basis of his race, religious beliefs, or some other impermissible reason. Consequently, Rodriguez's equal protection claims fail and it is recommended that these claims be dismissed.

14.     Lack of Personal Involvement

Defendants also contend that the Amended Complaint fails to allege any facts showing that many of the Defendants were personally involved in any constitutional misconduct. *See* ECF no. 56 at 24.

A plaintiff, in order to state an actionable § 1983 civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See  Groman v. Township of Manalapan,* 47 F.3d 628, 638 (3d Cir. 1995).  Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See  Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir.1976). As explained in *Rode:*

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or

actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode,* 845 F.2d at 1207. *See also Barkes v. First Correctional Medical, Inc*., 766 F.3d 307 (3 Cir. 2014).

Inmates also do not have a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 137–138 (1977); *Speight v. Sims*, No. 08–2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. *See also Brooks v. Beard,* 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); *Alexander v. Gennarini,* 144 Fed. Appx. 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability).

A review of the Amended Complaint indicates that Rodriguez is attempting to establish liability against a number of defendants either on the basis of their respective supervisory capacities within the DOC and/or SCI–Pittsburgh or based upon their involvement in the handling of Plaintiff's administrative grievances and appeals. Pursuant to the above discussion, either approach is insufficient for the purpose of establishing liability under § 1983.

Because the Amended Complaint does not allege personal involvement by Defendants Wetzel, Witherite, Varner, Capozza, Zaken, Woods, Scire, or Klosko, all claims against them should be dismissed.

### D. Futility

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc*., 482 F.3d 247, 251 (3d Cir. 2007). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

Given that the Court has twice provided Plaintiff with an opportunity to amend, (see Order of June 17, 2014 (ECF No. 49) and Order of August 20, 2015 (ECF No. 57), the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick,* 481 F. App'x 34, 36 (3d Cir. 2012). For the reasons discussed *supra*, it is recommended that Plaintiff not be granted leave to amend.

### III. Conclusion

For the reasons stated above, it is respectfully recommended that the Partial Motion to Dismiss filed by Defendants (ECF No. 55) be granted in part and denied in part.

It is respectfully recommended that any claim in the Amended Claim which allegedly arose after March 13, 2014 is denied without prejudice as these claims are outside the dates of the original complaint.

The only three claims remaining in this case should be (1) Rodriguez's claim that Defendants Chesmer, Elk, Roberson, Phillipi, and Moran allowed and encouraged Inmate Cave to assault Rodriguez (Amended Complaint, at ¶¶ 29 - 34); (2) Rodriguez's claim that on August 24, 2013, he was assaulted by Defendants Peer, Chesmer, Barnard, and Elk with the food aperture causing an injury to his wrist by (Amended Complaint, at ¶ 144); and (iii) Rodriguez's

claim that Defendants Peer, Chemser, Phillipi, Barnard, and Elk have filed false misconduct reports in retaliation for him filing grievances (Amended Complaint at ¶¶ 30, 35, 36, 120, 131).

It is further recommended that the following defendants be dismissed: (i) Defendant Smith be voluntarily dismissed; (ii) Defendants Wetzel, Witherite, Varner, Capozza, Zaken, Woods, Scire, and Klosko be dismissed with prejudice for lack of personal involvement; and (iii) Defendants Farley, Nichols, Scott, Wetzel, Williams, Witherite, Varner, Capozza, Kirby, Scire, Zaken, Woods, Adams, Lamonaca, and Klocko be dismissed with prejudice for failure to state a retaliation claim.

It is further recommended that Rodriguez not be provided leave to amend as it would be futile.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file Objections to this Report And Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated: February 3, 2015                                         *s/ Cynthia Reed Eddy*
                                                                Cynthia Reed Eddy
                                                                United States Magistrate Judge

cc.     HERIBERTO RODRIGUEZ
        FW1620
        SCI Pittsburgh
        P.O. Box 99991
        Pittsburgh, PA 15233
        (via U.S. First Class Mail)

        Timothy Mazzocca
        Office of the Attorney General
        (via ECF electronic notification)